## Hirst's Estate.

*Wills—Construction—Latent ambiguity.*

Testatrix made a bequest to the "Home for the Blind in Philadelphia." At the audit the bequest was claimed by several institutions for the blind in that city, and the auditing judge held that there was a latent ambiguity and admitted evidence that at the time of making the will the only home she knew of was the Pennsylvania Working Home for Blind Men, No. 3518 Lancaster Avenue, and the Pennsylvania Industrial Home for the Instruction of the Blind, at Overbrook; that she told her attorney she had never seen the institution at Overbrook, but would go out and take a look at it; that she died without looking at it and without altering her will, and in the light of such evidence he awarded the fund to the Lancaster Avenue institution. On exceptions: *Held*, no error.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1923, No. 143.

The facts appear from the following extract from the adjudication of the auditing judge (Thompson, J.) :

"In the will of testatrix a bequest is made to the 'Home for the Blind in Philadelphia.' It appears that there is no corporation or institution bearing this name, and testimony was taken in respect to the circumstances under which the will was drawn and the words 'Home for the Blind in Philadelphia' inserted, from which it appears that testatrix, at the time of the making of the will, was about sixty-three years of age and had been married twice, the first time to Dr. Kirby, who died in 1913. Testatrix had no children, and Dr. Kirby, her first husband, was blind during the last few months of his life. Testatrix had no connection in any capacity whatsoever with any institution carried on for the benefit of the blind; she contributed to no such institution, nor did she have any special interest in any such institution, her interest in the blind being brought about by the blindness of her first husband; nor did it appear that any friend or member of her family ever was afflicted with blindness other than her first husband. When she came to make her will, in 1921, she told Mr. Hepburn, her counsel, that she desired to do something for the blind in memory of her first husband, Dr. Kirby, and stated that her estate should be left for the foundation of a home for the blind. Mr. Hepburn advised her that the value of her estate would not warrant the establishment

Hirst's Estate.

of a new institution, and asked her if she could not better carry out her purpose by leaving what she intended to an existing institution, and she was finally persuaded to that effect, with the result that she instructed Mr. Hepburn to insert in her will a bequest to the 'Home for the Blind in Philadelphia.' Upon being asked, 'Which home for the blind do you mean,' testatrix said, 'The only one I know of is the one—and I only know that one by passing by it—on Lancaster Avenue, where they make the brooms; is there any other?' and Mr. Hepburn replied, 'Yes, there is a home for the blind at Overbrook, but I understand that is a school; would it make any difference to you if you left it to a school or a home?' She said, 'The thing I am interested in is leaving a memorial.' Mr. Hepburn further testified: 'She said, 'Would that make any difference whether it was a school or a home?' I said to her, 'You will have to make up your mind between what you want as regards this proposition; you specify in this, take your choice between the two, or whatever you want, and I will put it in here; I want you to specify which one of these two.' She said, 'Suppose I leave this will as it is.' I might mention that in previous wills she had called the home that she intended to erect in memory of her husband 'The R. D. Kirby Home for the Blind,' but in her conversation she referred to it as the Home for the Blind. She said, 'Let me have that over night; I will think it over; I will be at your office at 11 o'clock'—or whatever it was—'to-morrow morning; I am going to catch the train to go to Atlantic City,' or Swarthmore, as the case may be. I said, 'Now, you understand, you must specify.' She said, 'Suppose I leave it as it is; what will happen?' I said, 'Well, then, the court will have to determine what you mean by the 'Home for the Blind;' they will have to choose between the two homes for the blind; but you should specify which one you want; I don't want to leave this in this shape.' 'Well,' she said, 'How can I do that'—I will correct myself here. She said, when I mentioned the Overbrook Home for the Blind,' she said, 'Yes, I have heard of that one'—did not say she had ever seen it— 'I heard of that one; I will be in to-morrow morning to make up my mind about that thing.' When she came in the morning, she said, 'You told me'— I had the will run off as far down as the residue clause; that would not take a lot of time to get the balance of the will run off, because I wanted her to specify between the two homes—she said to me, 'You told me that if I left it as it was, the court would make the selection between these two.' I said, 'They may do that; that is the probabilities of what they may do; they may divide it.' I said to her, 'You should not do this; you should make the selection for yourself, and not leave this in any hazy shape, as it is at the present time.' She said, 'Well, I have not the time now to make that selection between the two, but, inasmuch as you told me that the court will award this to the Home for the Blind, I am satisfied; I want it as it is.' I said, 'It is all wrong; you should not leave it in that direction,' and I tried to force— rather, I told her she should do that. Then she began talking again about the erection of a home for the blind of her own. I said, 'No, you cannot do that; we agreed upon that last night.' She said, 'Well, then, you leave it as it is; the court would take care of it and see that it goes in that direction'— not in that direction, but 'for the benefit of a home for the blind between these two; I never have seen the one at Overbrook.' And she told me at one period during this conversation she would go out and take a look. As I stated before, she went away, and shortly after that time she was taken sick again. She went to Atlantic City, and I saw her in Atlantic City; I think it was in August, and at that time I asked her whether she had done anything in regard to that clause in her will which mentions the Home for the Blind.

3 D. & C.

She said she had not done anything; she had been sick, unable to do anything in regard to it. Now, she died, I think, Dec. 2, 1922; no, 1921.'

"At the audit, claim was made to the bequest for the 'Home for the Blind in Philadelphia' by the following Philadelphia institutions: Pennsylvania Industrial Home for Blind Women, No. 3827 Powelton Avenue; Chapin Memorial Home for Aged Blind (successor to Philadelphia Home for Aged and Infirm Blind), No. 6713 Woodland Avenue; The Pennsylvania Institution for the Instruction of the Blind, Overbrook, and Pennsylvania Working Home for Blind Men (and a department thereof, Pennsylvania Retreat for Blind Mutes and Aged and Infirm Blind Persons), No. 3518 Lancaster Avenue, on the theory that they are properly qualified to carry out the wishes and intentions of the testatrix as expressed in her will; and further, as to the first two institutions named, that they are entitled under the *cy pres* doctrine, and, as to the two latter named institutions, that their institutions were in the mind of the testatrix at the time she made her will, and, therefore, it is for the court to choose which of the two she meant, under the theory that the rule as to latent ambiguity applies.

"From the above it is clear that when testatrix used the words 'Home for the Blind in Philadelphia,' she meant the Pennsylvania Working Home for Blind Men, located at No. 3518 Lancaster Avenue, as that is the place where 'they make brooms,' and that was the only institution of that character of which she had knowledge, until the one at Overbrook was suggested to her, and upon her insisting that the title 'Home for the Blind' be used, I am of opinion that she meant the institution just named, with the possible substitution or addition of the Pennsylvania Institution for the Instruction of the Blind, at Overbrook, after she had inspected the same, which she never did. Testatrix having a definite institution in mind, irrespective of what she called it, the rule as to latent ambiguity, therefore, applies, and parol testimony is admissible to show what the testatrix meant: Root's Estate, 187 Pa. 118. As, therefore, testatrix used the title 'Home for the Blind in Philadelphia' as meaning the Pennsylvania Working Home for Blind Men, at No. 3518 Lancaster Avenue, I am of opinion that the legacy to the 'Home for the Blind' should be paid to the latter named institution, and it is so ordered."

*Philip Price,* for exceptions.

*Alfred N. Keim* and *Carroll R. Williams,* contra.

HENDERSON, J., May 25, 1923.—From an examination of the testimony, it is clear that when the testatrix designated "the Home for the Blind" as her beneficiary, she intended the Pennsylvania Working Home for Blind Men, the institution she knew by passing it on Lancaster Avenue, and she further described it as the place where brooms are made. There being called to her attention another institution for the blind, at Overbrook, she refused to change her designation, but added that when she came back she would go to see it.

Her counsel said to her, " 'You ought not to leave this thing in this condition; I don't want you to sign this will.' She said, 'I must sign it; I am satisfied with it as it is.' Under those circumstances, I said, 'What are you going to do about it? You will have to do something in the future.' She said, 'I will go out, take a look, and I will change that particular provision; I have got to sign this paper now, because I have to catch a train in a short time.' "

Clearly she held to the home where brooms are made, reserving her right to examine the Overbrook institution and make a change, and this she never did.

When her counsel undertook to tell her what the court might do in construing her will, that the fund might be given to either institution or divided between them, she stuck to her designation—"the Home for the Blind"—which to her meant the place where brooms are made.

The exceptions are dismissed and the adjudication is confirmed absolutely.